IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


S<small>HERRI</small> K<small>AY</small> M<small>OYER</small>,

    Plaintiff,

v.                                            Case No. 17-2003-JTM

N<small>ANCY</small> A. B<small>ERRYHILL</small>,
Acting Commissioner of Social Security

    Defendant.


MEMORANDUM AND ORDER


Sherry Moyer applied for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433 on September 20, 2013. The Commissioner of Social Security denied her application upon initial review (Tr. 72-79) and on reconsideration (Tr. 101-08), and Moyer sought review by an Administrative Law Judge (ALJ). Following a hearing on June 1, 2015, ALJ Timothy Stueve determined that Moyer was not disabled within the meaning of the Act. (Tr. 40-71). The decision of the Commissioner became final when the Appeals Council declined Moyer's request for review. (Tr. 1-3) on October 31, 2016. (Tr. 1-6).

Moyer then filed this appeal, raising three arguments. First, she contends that, after receiving a post-hearing consultative report by Abigail Blackman (M.D.), the ALJ should either have sought clarification of Dr. Blackman's report, or obtained a medical

source statement from an alternative source. She also argues that the ALJ erred in assessing her residual functional capacity (RFC), and failed to properly include all of her limitations when questioning a vocational expert at the hearing. For the reasons provided herein, the court finds that the Commissioner's decision was supported by substantial evidence contained in the record, and the decision of the Commissioner is affirmed.

Plaintiff-claimant Moyer was born on July 22, 1957, and has stated that she became disabled on April 30, 2008, due to ailments — a congenital pelvic kidney condition, pain in her back and extremities, liver problems, hypertension, mild degenerative joint disease in her left knee, asthma, and obesity. Moyer was not gainfully employed after April 30, 2008, and was last insured under the Act on December 31, 2013. She previously worked as an account sales manager.

The ALJ found that Moyer had an RFC which would permit her to lift and carry 20 pounds occasionally and 10 pounds frequently. She could stand or walk a total of six hours in an eight-hour day, and sit up to six hours. She could occasionally climb ramps or stairs, but never ladders, ropes, or scaffolds. She can occasionally stoop, crouch and crawl. She can occasionally tolerate exposure to atmospheric conditions as defined in Appendix D of the Selected Characteristics of Occupations. These restrictions arose from plaintiff's asthma, obesity, and knee impairments.

The ALJ determined that Moyer's kidney, liver, hypertension, and reported pain were not severe impairments. The complaints of pain were not documented in the medical record while she was insured under the Act, and Moyer apparently never sought treatment for it. (Tr. 30). Similarly, she has not sought treatment for her kidney condition.

A medical history taken on May 22, 2012 noted, with respect to her left kidney, that "at one time she was told she would need to have this removed, but she has done okay with this so far, has not had anything checked in years." (Tr. 349).

There are also indications in the record that Moyer has been diagnosed with hypertension and in August 2012 was found to have elevated liver enzymes. However, the record does not indicate permanent liver damage or show any abdominal imaging to support such a conclusion. Moyer's blood pressure is controlled with medication.

Under the Act, the court takes as conclusive the factual findings of the Commissioner so long as these are "supported by substantial evidence." 42 U.S.C. § 405(g). The court thus looks to whether those factual findings have such support, and whether the ALJ applied the correct legal standard. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence" means "more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion." *Barkley v. Astrue*, 2010 WL 3001753, *1 (D. Kan. July 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)). In making this determination, the court must "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

A claimant is disabled if he or she suffers from "a physical or mental impairment" which stops the claimant "from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v.*

3

*Astrue*, 501 F.Supp.2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)). This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience." *Barkley*, 2010 WL 3001753, at *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a). The steps are designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary. *Barkley*, 2010 WL 3001753, at *2.

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments. *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments." *Barkley*, 2010 WL 3001753, at *2; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

Upon assessing the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform his or her past relevant work or whether he or she can generally perform other work that exists in the national economy, respectively. *Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751). The claimant bears the burden in steps one through four to prove a disability that prevents performance of his or her past relevant work. *Lax*, 489 F.3d at 1084. The burden then shifts to the Commissioner at step five to show that, despite his or her alleged impairments, the claimant can perform other work in the national economy. *Id*.

At the conclusion of the hearing, counsel for plaintiff asked the ALJ to consider approving a consultative examination to supplement the record. The ALJ took the matter under advisement, and later approved an examination which was conducted on July 7, 2015 by Dr. Blackman, who issued a report (Tr. 389-92) and a Medical Source Statement (Tr. 393-398). Moyer complains that the statement is ambiguous because it contains modifications and alterations, and suggests that the ALJ was obliged to either seek clarification directly from Dr. Blackman, or obtain a second consultative examination by a different source.

The court finds no error. Although there are some corrections on the check-box Medical Source Statement, there is no reason at all to suspect the alterations were made by any person other than Dr. Blackman, modifying the form after further reflection. In response to the question "Does the individual require the use of a cane to ambulate," Dr.

Blackman originally checked the "Yes" box, but later crossed this out, checked the "No" box, and emphasized her answer with an arrow to where she wrote in the word, "NO."

The ALJ denied Moyer's request for clarification, finding that Dr. Blackman's ultimate opinion was clear. (Tr. 27). More importantly, the ALJ determined that Dr. Blackman's 2015 post-hearing opinion simply failed to give a helpful assessment of Moyer's physical condition a year and a half earlier, when she was last insured under the Act. *See* Tr. 33 ("I assign no weight to this opinion because it was issued more than eighteen months after the claimant's date last insured.").

The Commissioner "has broad latitude in ordering consultative examinations." *Rakes v. Colvin*, 2014 WL 6997555, at *5 (D. Kan. Dec. 10, 2014) (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997)). Here, the court finds no basis for concluding that the ALJ erred in finding that Dr. Blackburn's ultimate conclusions were not ambiguous and required no clarification. More importantly, the court finds the ALJ did not err in ordering additional post-hearing examinations given the passage of time.

The plaintiff conceded the limited probative nature of such an examination at the time she requested the examination. Her counsel acknowledged Moyer's treatment prior to the time she lost her insured status at the end of 2013 was "not extensive" and "fairly sporadic." (Tr. 69). However, a post-hearing consultative examination might be helpful, he submitted, agreeing that "I realize it's a stretch from today going back a couple of years." (Tr. 70).

Evidence of a claimant's condition after the date last insured is relevant only to the extent it illustrates the nature and severity of claimant's condition during the time insured. *Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir. 2004).

Here, the ALJ's assessment of Moyer's RFC was supported by substantial evidence. As to Moyer's reported knee impairment, the ALJ noted that an x-ray taken in 2008 after a fall showed

> mild degenerative spurring and joint space narrowing in three compartments. However, she has no history of physical therapy, injection therapy, or surgery. The claimant alleges she has not sought treatment for financial reasons. Nevertheless, if the claimant's pain were as severe as alleged it would be reasonable to assume that, without regular treatment, she would have sought at least occasional emergen[cy] treatment during periods of acute exacerbation. Moreover, despite her knee injury in January of 2008, she reported annual earnings in excess of substantial gainful activity levels for 2008.
>
> The claimant alleges significant mobility limitations including the inability to stand for longer than five minutes without a walker. However, she testified the walker is not prescribed, and nothing in the record indicates she used a walker prior to the date last insured. Therefore I find the claimant's conservative treatment history and her work history cast doubt over the severity of her subjective allegations.

(Tr. 32) (record citations omitted).

Noting evidence in the record that Moyer had been prescribed a nebulizer, when DR. Philip Stevens examined her in 2012 and detected normal respiration but with a raspy breath sound, the ALJ agreed that Moyer should be limited in her exposure to atmospheric conditions.

The burden was on Moyer to demonstrate her RFC precluded her from returning to her former employment. The court finds that the RFC adopted by the ALJ is supported

7

by substantial evidence. Since that assessment was valid, the court finds the ALJ did not err in concluding that she could return to her former work as an account sales manager. This decision was supported by testimony from the vocational expert, which incorporated the restrictions found to exist by the ALJ. (Tr. 66-67).

IT IS THEREFORE ORDERED this 30th day of March, 2018, that the judgment of the Commissioner is affirmed.

      ___s/ J. Thomas Marten_____
      J. THOMAS MARTEN, JUDGE